

_____
Honorable Natalie M. Cox
United States Bankruptcy Judge

Entered on Docket
April 06, 2023

# UNITED STATES BANKRUPTCY COURT

# DISTRICT OF NEVADA

| | |
|---|---|
| In re:<br><br>JOSE R MARTINEZ-CHICAS,<br>*dba* RM SERVICES NORTHERN NEVADA, and ARACELI G DIAZ, *fka* ARACELI AGUILAR, *fdba* CORAZON A CORAZON BEHAVIOR HEALTH,<br><br>Debtors. | Case No. 20-51150-NMC<br><br>Chapter 13<br><br><br><br>Hearing Dates: May 11 and 12, 2022, and August 8, 2022. |

**FINDINGS OF FACT AND CONCLUSIONS OF LAW REGARDING OBJECTION TO THE PROOF OF CLAIM OF SYLVIA LLOYD CLAIM NUMBER 15 (ECF NO. 28)[1]**

**Introduction**

On May 11, 12, and August 8, 2022, the Court held a three-day trial regarding Jose R. Martinez-Chicas's ("Debtor") objection to the proof of claim of Sylvia Lloyd ("Creditor").[2] Creditor filed a reply to the objection, and Debtor filed a response to the reply. Both Debtor and Creditor filed trial statements. Nathan Zeltzer, Esq., appeared on behalf of Debtor. Louis

---

[1] All references to "ECF No." are to the pleadings filed on the docket in the above-captioned bankruptcy case, unless otherwise noted.

[2] The Objection to Claim was originally filed by Jose R. Martinez-Chicas and Araceli G. Diaz, as joint debtors; however, on May 20, 2022, Araceli G. Diaz was dismissed from the case as joint debtor. Accordingly, the Court will refer to Jose R. Martinez-Chicas as the Debtor herein. (ECF No. 116).

Bubala, Esq., appeared on behalf of Creditor. Loren Eggen and Elissa Mendoza appeared as interpreter.

Witnesses who testified include Debtor, Brenda Aucutt, Araceli Garcia Diaz, Tami Albitre, Abraham Arellano, Roman William McCarthy, Ricardo Chicas, Kristina Wagoner, James Gast, and Creditor. At the conclusion of the trial, Debtor and Creditor submitted closing briefs.

The Court has reviewed all pleadings and related documents as well as heard the arguments of counsel, oral testimony of the witnesses, and exhibits presented at the hearing. The Court also has reviewed and takes judicial notice of the docket. See FED. R. EVID. 2019(c)(1), and as set forth below finds and concludes that Debtor's Objection to Claim of Sylvia Lloyd is sustained in part and overruled in part. Findings of fact and conclusions of law are set forth below. See FED. R. CIV. P. 52(a); FED. R. BANKR. P. 7052, 9014(c).

## FINDINGS OF FACT[3]

**Procedural Background**

On November 16, 2020, Creditor filed a Verified Complaint in the Second Judicial District Court, County of Washoe, State of Nevada, against Defendants Araceli Diaz, Corazon A Corazon Behavior Health, LLC, Debtor ("Corazon"), and Roman McCarthy ("Mr. McCarthy"). (ECF No. 81) for breach of contract, breach of implied covenant of good faith and fair dealing, failure to pay wages, and conversion based on the same factual dispute that is the subject of the instant objection to claim.

On April 7, 2021, an Order Granting Default Judgment Against Defendant Mr. McCarthy was entered by the Second Judicial District Court, County of Washoe, State of Nevada, in the amount of $300,000.00. (ECF No. 81).

---

[3] The court enters the following findings of fact and conclusions of law pursuant to FED R. CIV. P. 52, made applicable herein pursuant to FED. R. BANKR. P. 7052 and 9014(c). Any finding of fact that should be a conclusion of law is deemed a conclusion of law. Any conclusion of law that should be a finding of fact is deemed a finding of fact.

1    On December 22, 2020, Joint Debtors Jose R. Martinez-Chicas and Araceli G. Diaz filed
2    their voluntary petition for relief under Chapter 13 of the Bankruptcy Code. (ECF No. 1).
3    On December 23, 2020, the Chapter 13 Plan was filed and is pending confirmation.
4    (ECF No. 8).
5    On February 23, 2021, Creditor filed a proof of claim in the amount of $59,000.00 for
6    monies loaned and unpaid wages from Corazon. (Claim #15-1). Creditor indicated the claim is
7    partially secured by a lien on a 2014 Chevy Silverado pickup truck valued at $17,425.00. No
8    supporting documentation was attached.
9    On April 7, 2021, Joint Debtors Jose R. Martinez-Chicas and Araceli G. Diaz filed an
10   Objection to the Proof of Claim of Sylvia Lloyd—Claim Number 15. (ECF No. 28).
11   On May 10, 2021, Creditor filed a Reply to Objection to Proof of Claim of Sylvia
12   Lloyd—Claim Number 15. (ECF No. 34).
13   On May 20, 2021, Debtors filed a Response to Reply to Objection to the Proof of Claim
14   of Sylvia Lloyd—Claim Number 15. (ECF No. 36).
15   On February 15, 2022, Creditor filed an Amended Proof of Claim in the amount of
16   $600,424.26. (Claim #15-2). Creditor indicated the claim is unsecured and attached supporting
17   documentation.[4]
18   On February 17, 2022, the Court entered an Order Regarding Pretrial and Trial Matters,
19   setting the Objection to Claim for trial. (ECF No. 56).
20   On May 11 and 12, 2022, the Court conducted the first two days of the trial. (ECF No.
21   124 and 125).
22   On May 20, 2022, the Court entered an Order Granting Amended Motion to Dismiss
23   Party, dismissing joint debtor Araceli G. Diaz from the case. (ECF No. 116).

---

[4] The Amended Claim does not indicate that any portion of the claim is secured by the 2014 Chevy Silverado pickup. The claim for the pickup is no longer being pursued because it was agreed upon by the parties that it is Araceli G. Diaz's debt, and she was dismissed from the case on May 20, 2022. (ECF No. 124, 4:7-17).

On August 8, 2022, the Court concluded the trial and requested the parties submit closing briefs, after which time the matter would be considered submitted for decision. (ECF No. 134).

On September 27, 2022, Debtor filed his post-trial brief. (ECF No. 144).

On September 29, 2022, Creditor filed her post-trial brief. (ECF No. 147).

**Contentions of the Parties**

Creditor's claim can be divided into two categories: (1) damages Creditor alleges Debtor owes her for back wages and money loaned to Debtor relating to Debtor's former mental health services business, Corazon, and (2) damages Creditor claims that Debtor owes her regarding her investment in a real estate development project located at 160 and 162 Daisy Mae Lane, Sun Valley, NV 89433 ("the Property").[5] (ECF No. 72).

Creditor claims Debtor owes her the following amounts:

| | |
|---|---|
| Wages | $ 56,250.00 |
| Loans | $ 90,683.20 |
| Daisy Mae Property | $315,000.00 |
| Excess Cash Box | $   6,842.00 |
| Bobcat Deposit | $ 15,431.02 |
| Bobcat Contract | $ 45,788.03 |
| **Total** | **$529,994.25** |

(ECF No. 147).

Debtor contends that he and Creditor settled their issues on or around April 9, 2019, when he transferred title of the Property to Creditor's son, Mr. McCarthy, with Creditor's consent. As a result of the transfer, Debtor argues he is relieved of any financial liability to Creditor for her work at Corazon and investment in the Property. (ECF No. 72).

**Pertinent Testimony and Evidence**

**Wages:**

---

[5] There is no objection by Debtor that he is liable for the debts of Corazon based on an alter ego or piercing the corporate veil theory; therefore, Debtor has provided no evidence that rebuts the presumption of validity as it relates to this issue.

Creditor requests a total of $56,250.00 in unpaid wages from Debtor. She contends she was to be paid $1,250 every week for her work at Corazon from March 2018 to March 2019. (ECF No. 134, 111:17-23). Debtor testified that Creditor agreed to initially forego payment because the company was not making any money, and then later, after it began making money, agreed to be paid $1,250 every two weeks. (ECF No. 124, 18:23-19:8, 21:10-22).

Although there is no official writing memorializing the agreement between the parties, Debtor presented the following seven, endorsed checks from Corazon to Creditor to show Debtor's performance of the alleged agreement: Check No. 243 made payable to Sylvia Lloyd in the amount of $2,500 for "April Salary" dated May 1, 2018; Check No. 7001 made payable to Sylvia Lloyd in the amount of $1,250 for "8/1/18" dated August 20, 2018; Check No. 7013 made payable to Sylvia Lloyd in the amount of $1,250 for "8/1/18" dated August 8, 2018; Check No. 329 made payable to Sylvia Lloyd in the amount of $1,250 for "HRS" dated September 14, 2018; Check No. 312 made payable to Sylvia Lloyd in the amount of $1,250 for "WORK HRS" dated August 20, 2018; Check No. 289 made payable to Sylvia Lloyd in the amount of $5,000 dated July 2, 2018; and Check No. 257 made payable to Sylvia Lloyd in the amount of $1,250 for "May 1-15th" dated May 18, 2018. (ECF No. 79).

**Loans:**

Creditor seeks recovery for multiple loans she made to Corazon in the total amount of $90,683.20, itemized as follows:

$5,000—Loan to Corazon on December 17, 2018. The U.S. Bank statement for Corazon, dated December 3, 2018, through December 31, 2018, and provided by Creditor, shows a deposit on December 17, 2018, for $5,000. (ECF No. 89, Ex. 3). Creditor testified $5,000 was an amount loaned to the business, but she could not recall what specifically the loan was for. (ECF No. 134, 120:3-122:17). There is no additional evidence supporting this claim amount. Ms. Diaz testified that she couldn't recall receiving the $5,000. (ECF No. 134 at 89:5-7).

$60,000—Loan to Corazon on January 26, 2019. Creditor's check made payable to Corazon for $60,000 dated January 26, 2019. On the Memo line, Creditor wrote "Loan." (ECF No. 89, Ex. 3). Ms. Diaz testified that the $60,000 from Creditor "was probably deposited in the

5

1  company for Daisy Mae." (ECF No. 134, 89:12-14).  In reference to the $60,000 check, Creditor
2  testified that "[w]hatever she borrows from me, she has to pay back.  That's why loan is put on
3  there." (ECF No. 134, 123:3-11).  Creditor also explained that she would loan Debtor and Ms.
4  Diaz money for whatever they needed for the business: "as far as everything that they pretty
5  much needed, that was the loans that she had asked me–because she knew I had the money from
6  my dad's inheritance.  So she would ask me if she could borrow the money . . . ." (ECF No. 134,
7  111:23-112:1).

8      $15,000—Loan to Corazon on February 28, 2019.  Creditor's check made payable to
9  Debtor for $15,000 dated February 28, 2019.  (ECF No. 89, Ex. 3).  On the Memo line, Creditor
10 wrote "Insurance" and other words that she indicated "might say payroll." (ECF No. 134,
11 125:13-23).  Ms. Diaz indicated those funds were probably given by Creditor for repairs done on
12 the Daisy Mae Property. (ECF No. 134, 91:1-4).  Again, Creditor would loan money to Debtor
13 and Ms. Diaz when they needed it. (ECF No. 134, 111: 23-112:1).

14     $2,683.20—Loaned by Creditor to pay the amount owed to Staples on March 28, 2019.
15 An Account Statement from Staples for Corazon was provided as evidence demonstrating a
16 balance of $2,683.20. (ECF No. 89, Ex. 3).  Creditor testified that she paid this amount because
17 Staples threatened to sue her as the guarantor on the account. (ECF No. 134, 126:21-127).  Ms.
18 Diaz confirmed that she set up the account with Creditor in the company name to buy business
19 supplies. (ECF No. 134, 93:19-95:4).  Ms. Diaz acknowledged that Corazon did not pay the last
20 statement and that Creditor could have. (ECF No. 134, 95:1-4).

21     $3,500—Loaned by Creditor to Corazon on March 29, 2019.  Creditor's Check No. 1013
22 made payable to Debtor for $3,500 dated March 29, 2019.  In the Memo line, again the word
23 "loan" was written. (ECF No. 89, Ex. 3).  Creditor testified that she did not know "what the loan
24 was for," but Ms. Diaz "asked [her] for a loan." (ECF No. 134, 127:21-128:8).  Ms. Diaz
25 testified that she did not recollect why the check was labeled as a "loan." (ECF No. 134, 95:7-
26 18).

27     $4,500—to Corazon on September 28, 2018.  Creditor's Check No. 1403 made payable
28 to Corazon dated September 28, 2018, for a "Loan" as indicated on the memo line. (ECF No.

6

89, Ex. 3). That same day, Ms. Diaz's Check No. 1022 made payable to Creditor for $4,500 was subsequently dishonored by United Federal Credit Union. (ECF No. 89, Ex. 3).

**Daisy Mae Lane Property:**

Creditor requests $315,000.00 from the proceeds of the sale of two parcels of land: 160 and 162 Daisy Mae Lane, Sun Valley, Nevada 89433. Creditor funded the purchase of the properties by depositing $200,000 into the U.S. Bank account of Corazon on May 3, 2018. (ECF No. 90, Ex. 5; ECF No. 134, 124:6-25; ECF No. 124, 143:10-13). Creditor testified that she was advised by TitleCore to not take title in her name because she was in a tenuous relationship with her spouse, so she allowed title to the property to be taken in the name of Debtor and her son, Mr. McCarthy.[6] (ECF No. 95; ECF No. 134, 145:1-8). Creditor further testified that the verbal agreement "was that they were both to put it back or to sign it over to me since it was my money that paid for it. And that never happened." (ECF No. 134, 145:9-12).

The record reflects that Debtor and Creditor had a falling out. When that occurred, they executed an Agreement dated April 8, 2019, wherein Debtor agreed to transfer his interest in the Property to Creditor. (ECF No. 90, Ex. 5). By this Agreement, the transfer would operate to relieve Debtor of his financial obligations and loans owed to Creditor. Pursuant to the Agreement, Debtor stated that he is "giving up my rights up to 160/162 Daisy Mae Ln., Sun Valley 89433 . . . All property rights are now given to Sylvia Lloyd." (ECF No. 90, Ex. 5). However, when Debtor signed the Grant, Bargain & Sale Deed to surrender his interest in the property, he transferred title to Mr. McCarthy, Creditor's son, and not Creditor, on April 9, 2019. (ECF. No. 95). Mr. McCarthy testified that Debtor was supposed to transfer title of the property to Creditor; however, Debtor showed up to the signing late: "My mom couldn't wait there for hours any longer, so she left. And in the time frame that she left, he showed up and we just continued the process." (ECF No. 125, 127:20-25). Debtor testified that when he signed the

---

[6] The funds used to purchase the property came from Creditor's inheritance from her father. It was agreed among the parties that title would be taken in the names of Debtor and Mr. McCarthy rather than Creditor, even though she funded the purchase, to keep Creditor's husband from acquiring an interest in the property through marriage.

7

1  document, both Creditor and Mr. McCarthy were present, and it was his understanding that he
2  was "out of the property.  And the only owner of that property was Roman McCarthy, who I
3  gave the property to with Sylvia's consent." (ECF No. 124, 67:1-68:4).  Creditor simply testified
4  that no one gave her the property as agreed upon: "[N]o one signed it–gave me back the
5  property I purchased that was verbally agreed upon.  So with it being verbal, no written–there is
6  no proof.  So at the end of the day, it doesn't matter what the excuse is.  It was never put back
7  into my–or never put into my name." (ECF No. 134, 176:24-177:3).

8       As a result of this transfer, on April 9, 2019, Mr. McCarthy became the sole owner of 160
9  and 162 Daisy Mae Lane. (ECF No. 95).  Four months later, on August 2, 2019, Mr. McCarthy
10 transferred 162 Daisy Mae Lane, Sun Valley, Nevada 89433 to Creditor. (ECF No. 98).  On
11 August 6, 2020, one year later, he sold 160 Daisy Mae Lane to A. Damianova Inc., a Nevada
12 corporation, for $315,000.00. (ECF No. 96).  When asked what happened with the money, Mr.
13 McCarthy testified that "more than two thirds of it was [lost to] gambling . . . I bought like four
14 or five cars . . . jewelry . . . a couple of the cars got totaled.  Another I had gave [sic] away to my
15 rebound girlfriend, Shaylee (phonetic) at the time." (ECF No. 125, 114:1-20).  Creditor
16 eventually sued Mr. McCarthy in November 2020.  Other than a potential falling out between
17 Mr. McCarthy and Creditor, there is nothing in the record explaining why Mr. McCarthy
18 transferred 162 Daisy Mae Lane, but not 160 Daisy Mae Lane, to Creditor.

19      **Excess Cashbox Funds:**

20      Creditor claims she is entitled to the remaining money that she advanced for the remodel
21 of the properties on Daisy Mae Lane—$6,842.00.  As of the last report provided to Creditor,
22 there was $6,842.00 in the cash box. (ECF No. 105; ECF No. 134, 55:18-56:7).

23      Debtor testified that the money in the cash box came from Creditor who would front the
24 money for the Daisy Mae Lane construction project.  She "would deposit it in Corazon's
25 account.  And then from Corazon, it would be transferred to the R.M. Services' account." (ECF
26 No. 134, 50:3-6).  Money would be transferred to R.M. Services and then Ricardo Chicas, an
27 employee of Corazon, was to provide a summary of wages and expenses incurred on the project,
28 and they were paid using the money in the cash box. (ECF No. 134, 46:19-47:4, 49:7-9).  There

was no evidence presented regarding what happened with the $6,842.00 remaining in the cash box.

**Bobcat of Reno:**

Creditor requests two amounts arising from the purchase of a skidsteer and excavator from Bobcat of Reno: 1) Reimbursement of the $15,431.02 Debtor spent as a down payment on the purchase of a skidsteer for use on the Daisy Mae Project, and 2) reimbursement of $45,788.03 owing on a loan from Sheffield Financial to Creditor for Debtor's purchase of an excavator for use on the Daisy Mae Project. The skidsteer is titled in Debtor's name, and the excavator is titled in Creditor's name. (ECF No. 90, Ex. 8). Creditor claims that the source of the funds Debtor used as a down payment on the skidsteer was her $200,000 cash loan made to Corazon on May 3, 2018, discussed above. (ECF No. 90, Ex. 8). Although Ms. Diaz disputes the origin of the money used for the down payment on the skidsteer, she acknowledges that Debtor received the $200,000.00 loan from Creditor. (ECF No. 124, 160:12-16). Additionally, despite agreeing to make the payments on the excavator in the April 8, 2019, Agreement, Debtor admits he stopped making the payments once "[Creditor] became a totally different person." (ECF No. 124, 77:2-4). As of August 31, 2022, an unknown amount is still due and owing to Sheffield for the excavator. (ECF No. 147, Ex. 3). Creditor testified that she currently does not know where the excavator is located. (ECF No. 134, 158:1-2).

## CONCLUSIONS OF LAW

A.  **Jurisdiction; Venue; Core Proceeding**

The Court has jurisdiction over Debtor's Chapter 13 bankruptcy case. 28 U.S.C. §§ 1334(a) and 157(a), and LR 1001(b)(1).[7] Venue of Debtor's Chapter 13 bankruptcy case is proper in the District of Nevada under 28 U.S.C. § 1408(1). Debtor's Objection to Creditor's Claim is a statutorily core proceeding. 28 U.S.C. § 157(b)(2)(a) and (b). Debtor's Objection to Creditor's Claim is also constitutionally a core proceeding because it arises under Section 502 of

---

[7] "LR" refers to the Local Rules of Bankruptcy Practice for the District of Nevada. All references to "Section" are to 11 U.S.C. § 101 et. seq., unless otherwise noted.

9

the Code. See Certain Underwriters at Lloyds v. GACN, Inc. (In re GACN, Inc.), 55 B.R. 684, 692-93 (9th Cir. BAP 2016), appeal dismissed, No. 16-60079, 2017 WL 4513499 (9th Cir. May 10, 2017 (noting that the phrase "arising under title 11" as used in 28 U.S.C. § 157(a) and (b) is a term of art meaning a proceeding that "presents claims for relief created or controlled by title 11."), citing Wilshire Courtyard v. Cal. Franchise Tax Bd. (In re Wilshire Courtyard), 729 F.3d 1279, 1285 (9th Cir. 2013).

**B.     Controlling Statutory Provisions**

Under 11 U.S.C. § 502(a), "[a] claim or interest, proof of which is filed under section 501 of this title, is deemed allowed, unless a party in interest . . . objects." In resolving a claim objection, § 502(b)(1) of the Bankruptcy Code requires the Court to "determine the amount of such claim . . . as of the date of the filing of the petition" and to "allow such claim in such amount, except to the extent that -- (1) such claim is unenforceable against the debtor and property of the debtor, under any agreement or applicable law for a reason other than because such claim is contingent or unmatured." 11 U.S.C. § 502(b)(1).

A creditor's proper filing of a proof of claim constitutes *prima facie* evidence of the validity and amount of the claim pursuant to Section 502(a) and Rule 3001(f), so long as the claim is filed in writing using the proper official form. See Branch Banking & Trust Co. v. R&S St. Rose Lenders, LLC, 2014 WL 4929506 at *3 (D. Nev. Oct. 1, 2014), appeal dismissed, 621 Fed. App'x 497 (9th Cir. Nov. 2, 2015). "It is generally held that failure to attach writings to a proof of claim does not require a bankruptcy court to disallow a claim on that basis alone. Rather, the claim is not entitled to be considered as *prima facie* evidence of the claim's validity." Heath v. Am. Express Travel Related Serv. Co. (In re Heath), 331 B.R. 424, 433 (9th Cir. BAP 2005), citing Ashford v. Consol. Pioneer Mortg. (In re Consol, Pioneer Mortg.) 178 B.R. 222, 226 (9th Cir. BAP 1995), aff'd 91 F.3d 151 (9th Cir. 1996).

Under Rule 3007(a) a claim objection must be filed in writing. A claim objection is a "contested matter" governed by Rule 9014 and is regarded as a motion for purposes of FED. R. CIV. P. 43(e). "Should objection be taken, the objector is then called upon to produce evidence and show facts tending to defeat the claim by probative force equal to that of the allegations of

the proofs of claim themselves. A proof of claim is strong enough to carry over a mere formal objection without more. ***The ultimate burden of persuasion is, however, always on the claimant.*** Branch Banking at *3, citing Wright v. Holm (In re Holm), 931 F.2d 620, 623 (9th Cir. 1991) (emphasis added).

Under Section 502(b), if an objection to a claim is made by a party in interest, the court, after notice and a hearing, shall determine the amount of such claim. Any dispute over the validity of a proof of claim is governed by state law. Branch Banking at *3, citing Johnson v. Righetti (In re Johnson), 756 F.2d 738, 741 (9th Cir. 1985), cert. denied, 474 U.S. 828 (1985).

Here, the record shows that Creditor failed, in part, to satisfy her ultimate burden of persuasion. The following paragraphs conclude as follows:

**1.     Creditor's Claim is Entitled to Prima Facie Validity in the First Instance**

Creditor's Amended Claim #15-2 was filed with the Court in writing on the appropriate official form, with appropriate supporting documentation attached. Debtor makes no argument to the contrary regarding the Amended Claim. The Court, therefore, concludes that Creditor's Claim is entitled to *prima facie* validity in the first instance. See Rule 3001(f); see also Branch Banking at *3.

**2.     Debtor's Objection is Sufficient to Overcome the Prima Facie Validity of Creditor's Claim, in Part**

Debtor contends that signing the Agreement dated April 8, 2019, wherein he agreed to transfer his interest in the Property to Creditor, relieved him of any liability on the monies owed to Creditor for her services and loans made to Corazon. Creditor contends Debtor failed to transfer title of the Property to her, and instead transferred it to Mr. McCarthy, in breach of their April 8, 2019, Agreement.

Despite the April 8, 2019, Agreement to transfer the Property to Creditor, on April 9, 2019, the Property was transferred by deed to Mr. McCarthy. The evidence presented, however, demonstrates that there were various oral agreements among Debtor, Creditor, and Mr. McCarthy regarding legal title and ownership of the Property. For instance, when the Property was first purchased, it was agreed among the parties that title would be taken in the names of

Debtor and Mr. McCarthy rather than Creditor, even though Creditor funded the purchase, to keep her husband from acquiring an interest in the property through marriage. Creditor contends, and the evidence suggests, there was an oral agreement among the parties that her name would be put back on the property later, but that did not happen.

Subsequent to the purchase, there was a falling out between Debtor and Creditor. As a result, they entered into the April 8, 2019, written Agreement, wherein Debtor agreed to transfer his interest in the Property to Creditor. By this Agreement, the transfer would operate to relieve Debtor of his financial obligations and loans owed to Creditor. Instead of signing the deed over to Creditor, Debtor signed the deed over to Mr. McCarthy. The evidence suggests Creditor consented to the transfer of the Property to Mr. McCarthy, which is consistent with the prior course of conduct engaged in by the parties when title to the Property was first taken in the name of Debtor and Mr. McCarthy, rather than Creditor, and that her recourse is against Mr. McCarthy, not Debtor.

Shortly after acquiring the Property, on August 2, 2019, Mr. McCarthy transferred a portion of the Property, 162 Daisy Mae Lane, to Creditor. Presumably due to a falling out between Mr. McCarthy and Creditor, Mr. McCarthy took no action to transfer 160 Daisy Mae Lane to Creditor, but instead sold it for $315,000.00 to A. Damianova Inc. on August 6, 2020. As a result, Creditor filed the State Court lawsuit described above and obtained a default judgment on April 7, 2021, in the amount of $300,000.00 against Mr. McCarthy, a sum Creditor can certainly attempt to collect from Mr. McCarthy. See Capital Mortg. Holding v. Hahn, 101 Nev. 314, 314-315 (1985) ("oral agreements otherwise unenforceable because of the statute of frauds may be enforced under the doctrines of part performance or estoppel"); see also Jones v. Barnhart, 89 Nev. 74, 76 (1973); see also Zunino v. Paramore, 83 Nev. 506 (1967).

Debtor's Objection is indeed supported by evidence and facts that tend to defeat Creditor's Claim by probative force equal to that of the allegations of the Claim itself, in part. The only portion of Creditor's Claim that is not defeated is the amount owed for the excavator that Creditor purchased in her name with Debtor's agreement to make the payments. The April 8, 2019, Agreement specifically relieved Debtor of all financial liability to Creditor except for

his continued payments on the excavator. Because it is undisputed that he stopped making the payments and breached this portion of the Agreement, the Court finds the Creditor is entitled to this portion of her Claim.

### 3. Creditor failed, in Part, and Succeeded in Part, to Carry Her Ultimate Burden of Proof of Persuading this Court that the Claim Should be Allowed Under Section 502

Faced with Debtor's objections, Creditor did not provide sufficient evidence to persuade this Court that Creditor's Claim should be allowed in the amount of $529,994.25. The April 8, 2019, Agreement and the oral testimony of the parties instead persuaded this Court that the transfer of the Property from Debtor to Mr. McCarthy relieved Debtor of his financial obligations for the services and loans provided by Creditor to Corazon. The Court finds that the only portion of the claim that should be allowed is the amount Debtor owes Creditor based on his breached agreement to make the payments to Sheffield Financial for the excavator.

## CONCLUSION

For the foregoing reasons, the Court finds and concludes that Debtor's Objection to Claim of Sylvia Lloyd Claim Number 15 (ECF No. 28), is sustained in part and overruled in part. Specifically, the Objection is sustained as it pertains to Debtor's financial obligations for the services and loans provided by Creditor to Corazon---except that portion of the Claim as it pertains to the amount Debtor agreed to pay Sheffield Financial for the excavator on behalf of Creditor.

Each party shall bear their own attorney's fees and costs.

The Court will enter an order consistent with these findings of fact and conclusions of law entered contemporaneously herewith.

Creditor shall file an affidavit with the Court setting forth the current amount due and owing to Sheffield Financial within ten (10) days of the date of entry of these Findings of Fact and Conclusions of Law, after which time the Court will enter an Order consistent therewith.

Copy sent via CM/ECF ELECTRONIC FILING

Copy sent via BNC to:

1 | **JOSE R MARTINEZ-CHICAS**
2 | 5615 LUPIN DR.
  | SUN VALLEY, NV 89433

# # #